IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HOMAR JOSÉ TOLEDO-LÓPEZ

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.: 24-1019 (MEL)

**OPINION AND ORDER**

I. **PROCEDURAL AND FACTUAL BACKGROUND**

Pending before the court is Mr. Homar José Toledo-López's ("Plaintiff") complaint challenging the decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 3. On June 3, 2020, Plaintiff filed an application for Social Security benefits. Tr. 387-93. Plaintiff alleged that he initially became unable to work due to disability on April 20, 2020 (the "onset date"). Tr. 25. Prior to the onset date, Plaintiff's past relevant work was as a warehouse supervisor. Tr. 34. Plaintiff's claim was initially denied on December 9, 2020, and upon reconsideration on March 19, 2021. Tr. 292-94.

Thereafter, at Plaintiff's request, a telephone hearing was conducted on November 18, 2021, before Administrative Law Judge Livia Morales ("the ALJ"). Tr. 41-71. The ALJ ordered additional medical expert review after the hearing. Tr. 70. Consistent with this order, consultative examiners Dr. Gilberto Muñoz, M.D. ("Dr. Muñoz") and Dr. José A. Zayas, M.D ("Dr. Zayas") submitted additional reports. Tr. 866-75; Tr. 888-95. After the hearing and receipt of both consultative examinations, Plaintiff's disability and benefits claim request was denied on September 15, 2022. Tr. 23-40. Plaintiff filed a Request for Review of the ALJ decision on October 6, 2022. Tr. 386. The

Appeals Council denied Plaintiff's request on December 11, 2023, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1-8. Plaintiff filed a complaint on January 15, 2024. ECF No. 3. Both parties have filed supporting memoranda. ECF Nos. 18, 21. Plaintiff also submitted a reply brief. ECF No. 22.

## II.     LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per

curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is conclusively determined that plaintiff is or is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). However, if the ALJ cannot conclusively determine whether a plaintiff is or is not disabled at a given step, then the analysis will proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability

benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functioning capacity ("RFC"). *Id*. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III.   THE ALJ'S DECISION

In her decision dated September 15, 2022, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2021, the date last insured. Tr. 25. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the onset date of April 20, 2020, through the end of the relevant period. Tr. at 26. At step two, the ALJ determined that Plaintiff had the following severe impairments: history of

4

myocardial infarction with status post catheterization, carotid artery disease, peripheral arterial disease, chronic obstructive pulmonary disease, and hypertension. *Id*. The ALJ also found Plaintiff had non-severe impairments including but not limited to the following: bilateral carpal tunnel syndrome, mixed hyperlipidemia, hypothyroidism, enlarged prostate without urinary tract symptoms, anemia, pre-diabetes mellitus, leukocytosis, adrenal insufficiency, abnormal liver enzymes, and dyslipidemia. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 27. Next, the ALJ determined that during the relevant period:

> [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he could lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; sit for 6 hours in an 8-hour workday; stand or walk for 2 hours in an 8-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, or crawl; never work at unprotected heights, with moving mechanical parts, or operating a motor vehicle; and be occasionally exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations.

Tr. 28. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work as a warehouse supervisor. Tr. 34. At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert ("VE"). *Id*. at 35. The VE testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: document preparer, charge account clerk, and order clerk. *Id*. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that he was not disabled. Tr. 36.

### IV.    LEGAL ANALYSIS

Plaintiff argues that the ALJ erred at step three of the sequential evaluation process and in determining her RFC with regard to his respiratory condition of chronic obstructive pulmonary

disease ("COPD"). ECF No. 18 at 11. The Commissioner responds asserting that Plaintiff's challenge requires the Court to reweigh the evidence, which is something the Court may not do. ECF No. 21 at 1 (citing *Colon v. Sec'y of Health & Hum. Servs.*, 877 F.2d 148,153 (1st Cir. 1989)). In the alternative, the Commissioner argues that the ALJ's decision was supported by substantial evidence and should therefore be affirmed. *Id*. at 2. For the reasons explained below, the ALJ applied the correct legal standards in determining whether Plaintiff met or equaled 20 C.F.R. Pt. 404, Subpt. P, App. 1, §3.02 ("Listing 3.02") and the ALJ's determination at step three was supported by substantial evidence.

Plaintiff argues that the ALJ's determination at step three was not based on substantial evidence and did not follow correct legal standards. ECF No. 18 at 11-18. First, Plaintiff contends that the ALJ discounted and did not consider a medical test conducted by Dr. Zayas because it was conducted after the date last insured ("DLI"). Second, Plaintiff argues the ALJ failed to properly follow the medical opinion evidence rule outlined in 20 C.F.R. § 416.920c in finding one consultative examiner's opinion more persuasive than another consultative examiner's opinion, i.e., finding Dr. Muñoz to be more persuasive than Dr. Zayas. Lastly, Plaintiff argues that the ALJ erred when she did not hold a supplemental hearing after receiving the consultative examinations from Dr. Muñoz and Dr. Zayas. *Id*. at 15-16.

At step three, the ALJ determines whether a claimant has an impairment or combination of impairments meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. 20 C.F.R. § 404.1520(a)(4)(iii). The SSA's "Listings of Impairments" describes, "for each of the major body systems[,] [the] impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity[.]" 20 C.F.R. § 404.1525(a). If the ALJ finds that an impairment meets or equals a listing, the ALJ must find that the claimant is disabled. *See id*.  To meet the criteria of a listing, a plaintiff's impairment must satisfy all the duration and objective medical requirements.

6

*See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a [plaintiff] to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); 20 C.F.R. § 404.1525(c)(3).

The ALJ requested additional medical evidence in order to make her step three determination. During Plaintiff's hearing on November 18, 2021, the ALJ said, in reference to Plaintiff's COPD, that she was going to have a "medical expert review and give his opinion about whether [Plaintiff] meets or equals any listing" and "send an interrogatory to a medical expert." Tr. 70. Consistent with these statements, on January 28, 2022, after the DLI of December 31, 2021, the ALJ asked Dr. Muñoz, an occupational medicine and family practice physician, to complete the interrogatories. Tr. 856-58. Dr. Muñoz answered the interrogatories on February 25, 2022. Tr. 866-75. Another consultative examination was performed by Dr. Zayas, a pneumologist, who additionally conducted a spirometry on August 3, 2022. Tr. 888. In Dr.Muñoz's report, as to Listing 3.02, he states that he was "unable to assess severity" and that the spirometry on April 28, 2021 (Tr. 792), was not "technically appropriate." Tr. 874. Dr. Muñoz provides no explanation as to why a spirometry is not appropriate.[1] Tr. 792. Dr. Zayas conducted his consultative examination, using the same Disability Determination Services form as Dr. Muñoz. Tr. 889-896. Additionally, Dr. Zayas conducted a spirometry. A spirometry is a test that measures how well someone moves air into and out of their lungs. 20 C.F.R. pt. 404, Subpt. P, app. 1 §§ 3.00E(1).

Relevant to this case is Listing 3.02, which pertains to chronic respiratory disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §3.02. To show that an impairment meets or equals Listing 3.02, Plaintiff must satisfy the criteria set forth in any of the four sections ("Paragraphs") in Listing 3.02.

---

[1] The ALJ cites to Dr. Muñoz's report that a spirometry was not technically appropriate, but similarly does not explain why. Tr. 31. A spirometry test is specifically relevant to making a listing determination at Paragraph A. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §3.02. Moreover, chronic respiratory disorders under Listing 3.02 can be due to *any cause except cystic fibrosis*, which rules out any argument that a spirometry was not relevant because of the cause of Plaintiff's COPD. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §3.02 (emphasis added).

*See id*. After finding that Plaintiff suffered from COPD, the ALJ considered whether his impairments met or equaled Listing 3.02:

> In addition, listing 3.02 with respect to the claimant's chronic obstructive pulmonary disorder (COPD) is not met or equaled because there is no documented evidence on record of listing level forced expiratory volume (FEV1) or forced vital capacity (FVC) levels, chronic impairment of gas exchange, or exacerbations or complications requiring hospitalizations before the date last insured. The longitudinal record within the relevant period showed a respiratory condition that remained stable with treatment. (Exs. 4F, 5F, 6F) On August 3, 2022, a pulmonary function test was performed on the claimant, and it revealed a post FVC value of 1.71. At 66 inches tall, with an FVC less than or equal to 1.90, the claimant's respiratory condition met listing 3.02B. (Ex.18F/pg. 13) However, this test was performed after the date last insured and no previous objective study had revealed listing level values. Accordingly, I find that the claimant's COPD did not meet or medically equal the criteria of listing 3.02 within the relevant period.

Tr. 27-28. The ALJ's statement concerning an FVC less than or equal to 1.90 refers to Paragraph A of Listing 3.02. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §3.02. Paragraph A permits a claimant to meet the listing with a "FEV1 less than or equal to the value in Table I-A or I-B for your age, gender, and height without shoes." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §3.02(A). This FEV1 number is produced by a spirometry, which involves a "forced expiratory maneuver [which] is a maximum inhalation followed by a maximum exhalation." 20 C.F.R. pt. 404, Subpt. P, app. 1 §§ 3.00E(1). The volume of air you exhale in the first second of the forced expiratory maneuver is the FEV1. *Id*. The total volume of air that you exhale during the entire forced expiratory maneuver is the FVC. *Id*.

Paragraph A indicates that a male of Plaintiff's height, 66 inches, and age 20 or older must have a FEV1 of less than or equal to 1.5 or a FVC less than or equal to 1.9. The ALJ concluded that Plaintiff's FVC results in the record did meet the Listing 3.02(b), but because "no previous objective study had revealed listing level values" and because the test was conducted after the DLI, the ALJ found that Plaintiff's COPD did not meet the requirements for Listing 3.02. Tr. 27-28. The two reasons provided by the ALJ for discounting the spirometry test are discussed below.

Plaintiff argues that the ALJ erred in applying the medical opinion evidence rule under 20 C.F.R. § 416.920c in finding Dr. Zayas's opinion less persuasive than other medical evidence of record. ECF No. 18 at 12-14. According to the medical opinion evidence rule, in considering medical opinions and prior administrative medical findings, the most important factors to be considered in assessing persuasiveness are "supportability" and "consistency." 20 C.F.R. § 416.920c(a), (b)(2). With regards to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ..., the more persuasive the medical opinions ... will be." 20 C.F.R. § 416.920c(c)(1). "Objective medical evidence is medical signs, laboratory findings, or both." 20 C.F.R. § 416.913(a)(1). In reference to consistency, "[t]he more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." 20 C.F.R. § 416.920c(c)(2). Other factors that are weighed include the medical source's relationship with the Plaintiffs, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c)(3)-(5). "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not persuasive regardless of who made the medical opinion." 82 Fed. Reg. at 5854. The ALJ is required to articulate how persuasive she or he found the medical opinions from each medical source together in a single analysis and must explain how she or he considered the supportability and consistency factors for each medical source's medical opinion in the decision, but is not required to explain the other factors. 20 C.F.R. § 416.920c(b)(1).

The ALJ correctly assessed Dr. Zayas's medical opinion within the context of the record as a whole, providing three main reasons why she found Dr. Zayas's medical opinion less persuasive. First, Dr. Zayas's spirometry test was an outlier compared to past test results. Second, Plaintiff made a poor effort during the test. Third, the spirometry test was conducted eight months after the DLI.

9

Therefore, the ALJ's ultimate decision finding Dr. Zayas's opinion unpersuasive was supported by substantial evidence.

First, Dr. Zayas's spirometry test revealed listing level values that met or equaled Listing 3.02; however, no other previous objective study had. A spirometry performed on March 16, 2020, revealed normal results. Tr. 30, 655-56. Another spirometry performed in May 2020 revealed abnormal FEV1 levels consistent with emphysema and mild diffusing capacity decrease. Tr. 30, 773. During an examination by Dr. René C. Gómez ("Dr. Gómez") in September 2020, Dr. Gómez indicated that Plaintiff's lungs were clear to auscultation with percussion, with equal breath sounds. Tr. 753. Dr. Gómez diagnosed Plaintiff with COPD and opined that Plaintiff's symptoms were more of a pulmonary than cardiac nature. Tr. 32, 754. Dr. Gómez also took a chest x-ray, which revealed no acute cardiopulmonary pathology with well-expanded and clear lungs. Tr. 30, 761. In March 2021, pneumologist Carlos García Rodríguez, M.D. ("Dr. García") also diagnosed Plaintiff with unspecified COPD despite documenting symmetric clear lungs. Tr. 765-67, 832-33. Dr. García further indicated that the "patient has severe copd gold c." Tr. 499. A following spirometry test in March 2021 revealed a possible obstruction with an FVC of 2.95 and an FEV1 of 1.73, and a pulmonary function report from April 2021 showed only minimal obstructive lung defect with diffusion capacity within normal limits. Tr. 30, 763, 792. Therefore, the spirometry test conducted by Dr. Zayas, revealing listing levels that met or equaled Listing 3.02, was an outlier as compared to other medical evidence of record.

There is some tension between the ALJ's decision to disregard the spirometry test based on inconsistency with the record and the ALJ's proffered reason for ordering the test. Based on the hearing transcript, the ALJ ordered the consultative examinations specifically for Plaintiff's COPD. Tr. 70 ("But what I'm going to do is – at least as far as his heart, COPD was mentioned. What I am going to do is have a medical expert review and give his opinion about whether he meets or equals

10

any listing."). However, the ALJ appears to be open to the possibility that her ordered examinations may be inconsistent "with the longitudinal medical record and not supported by the objective findings within the relevant period." Tr. 33. While Dr. Zayas is a pulmonary specialist, being a specialist does not automatically entitle that opinion to greater weight; however, the medical opinion of a medical source "who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of the specialty." 20 C.F.R. § 404.1520(c)(4).

Even if we assume *in arguendo* the spirometry results from Dr. Zayas were consistent with prior medical evidence, the ALJ mentions two other important reasons for finding the results less persuasive. First, Dr. Zayas noted that Plaintiff made "very poor effort" during the exam, and second, the test "reflected the claimant's condition 8 months after the date last insured." Tr. 31, 33, 888. These facts are highly relevant, as both impact the reliability and trustworthiness of the exam. If Plaintiff made a poor effort on the spirometry exam, the results cannot be relied upon, as the test measures how well someone moves air into and out of their lungs. Plaintiff responded to Dr. Zayas's comment that his effort was poor when Plaintiff's attorney responded to the ALJ's August 2, 2022 letter regarding Plaintiff's right to comment on the consultative examinations.[2] Tr. 496. Plaintiff

---

[2] As part of his argument, Plaintiff mentions the fact that the ALJ did not conduct a supplementary hearing after receiving the consultative examinations. During the hearing on November 18, 2021, the ALJ informed the parties that upon receipt of the interrogatories from the medical expert, Plaintiff and his attorney would "have an opportunity to review it, and make comments…[and] [t]here will be a supplemental hearing…" which the ALJ clarified would be scheduled by her after she received the report. Tr. 70-71. On August 11, 2022, the ALJ sent a letter to Plaintiff's counsel regarding receipt of Dr. Zayas's consultative examination report, which reads in relevant part that Plaintiff may request a supplemental hearing and if she does so, the ALJ will "grant the request unless I decide to issue a fully favorable decision." Tr. 493. On August 16, 2022, Plaintiff's counsel responded via letter to the ALJ. Tr. 496. In said letter, Plaintiff argues that Dr. Zayas's report is consistent with the medical findings in the record, revealing a severe pulmonary impairment with "severe obstruction and severe restrictions." *Id*. Plaintiff does not request a supplemental hearing anywhere in the letter. *Id*. While the ALJ did tell the parties, during the hearing in November of 2021, that she would hold a supplemental hearing upon receipt of the reports, the ALJ gave Plaintiff the opportunity for a hearing and Plaintiff failed to request one.

explained to his attorney that he did his best when blowing during the test and that he told this to Dr. Zayas during the examination. *Id*. However, the test was not redone.

Further, the test was conducted 8 months after the DLI and may not be reliable indicator of his health during the relevant period. Plaintiff argues that the ALJ erred by summarily disregarding the spirometry test because it was performed after the DLI. To qualify for Social Security disability benefits, a claimant has the burden to show that he was disabled during the coverage period, which is the time period between the alleged disability onset date and the DLI. *See* 42 U.S.C. § 416(i); *Alcaide v. Sec'y of Health & Human Servs.*, 601 F. Supp. 669, 672 (D.P.R. 1985); *Sampson v. Califano*, 551 F.2d 881, 882 (1st Cir. 1977). Accordingly, evidence that does not pertain to proving disability during the coverage period should not be considered by an ALJ to determine whether claimant is disabled. Nevertheless, "[m]edical evidence generated **after** a claimant's insured status expires may be considered for what light (if any) it sheds on the question whether claimant's impairment reached disabling severity before his insured status expired." *Padilla Pérez v. Sec'y of Health & Human Servs.*, 985 F.2d 552, at *5 (1st Cir.1993) (unpublished) (emphasis added) (citing *Deblois v. Sec'y of Health & Human Servs.*, 686 F.2d 76, 81 (1st Cir.1982); *Alcaide*, 601 F. Supp. at 672–73); *see also Patoski v. Berryhill*, 320 F.Supp.3d 283, 291 (D. Mass. 2018). The Fourth Circuit has held that consideration of evidence created after a claimant's DLI is appropriate when "'the record is not so persuasive as to rule out any linkage' of the final condition of the claimant with [his] earlier symptoms." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012) (quoting *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)). An ALJ may also consider evidence from a before the coverage period, i.e., evidence from a prior denial for the limited purpose of reviewing the preliminary facts or cumulative medical history necessary to determine whether the claimant was disabled at the time of his second application." *See Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 193 (1st Cir. 1987). Thus, an ALJ should consider medical evidence

12

from outside of the coverage period if it sheds light on whether Plaintiff's impairments were severe prior to the DLI, although evidence dated outside that period may have less probative value, depending on the circumstances.

While the ALJ writes that she disregarded the spirometry exam, in part, because it was performed after the DLI, she does in fact consider and weigh the evidence in coming to her determination. The ALJ writes:

> I note that the record does include additional medical evidence for the period before the alleged onset date as well as for the period after the date last insured. As previously explained, I have reviewed and considered this evidence, *but only to the limited extent* it may lend some insight into the claimant's functioning prior to the alleged onset date regarding impairments that might be permanently disabling or imposing ongoing functional limitations or into his functioning prior to the date last insured. Otherwise, such evidence falls outside the period under consideration, and is not relevant.

Tr. 31 (emphasis added) (internal citations omitted). In considering whether the test lends insight, as previously discussed, the ALJ took into account Dr. Zayas's opinion in comparison to other objective studies and medical evidence of record and found it to be unpersuasive. Moreover, the ALJ specifically noted that the test was performed 8 months after the date last insured and that Plaintiff gave a poor effort during the exam. Tr. 31, 33. This is consistent with the ALJ's requirement to consider "[m]edical evidence generated after a claimant's insured status expires…for what light (if any) it sheds on the question whether claimant's impairment reached disabling severity before his insured status expired." *Padilla Pérez*, 985 F.2d at *5. Therefore, the ALJ did not err in discounting evidence post-DLI.

V.  CONCLUSION

Based on the foregoing analysis, the Court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits contained no legal error as it was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of January, 2025.

s/Marcos E. López
U.S. Magistrate Judge
